IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AJIT BANERJEE <u>et al.</u>            :
                                       :
v.                                     :  Civil No. WMN-04-1434
                                       :
TENNESSEE VALLEY AUTHORITY             :
<u>et al.</u>                          :

<u>AMENDED MEMORANDUM</u>

     Before the Court are two motions for summary judgment.  The

first was filed by Defendant Tennessee Valley Authority (TVA).

Paper No. 18.  That motion is opposed by Plaintiffs Ajit and

Tammy Banerjee, who alternatively move for summary judgment

against Defendant United States of America.  Paper No. 36.  The

United States opposes both motions and each is ripe for decision.

Upon a review of the motions and the applicable case law, the

Court determines that no hearing is necessary (Local Rule 105.6)

and that both motions will be denied.

<u>I.  FACTUAL AND PROCEDURAL BACKGROUND</u>

     This action arises out of an April 2002 two-car accident,

which occurred in the parking lot of the Aberdeen Proving Ground

in Maryland.  Steven Minton allegedly backed his vehicle into a

car being driven by Plaintiff Ajit Banerjee causing injury to

Plaintiffs.

     Defendant TVA asserts that it hired Minton in 1999 and

immediately loaned him to the United States Army (the Army) to

work full-time as a mail courier.  TVA also acknowledges,

however, that at the time of accident, Minton was driving a TVA
vehicle and on TVA's payroll.

Plaintiffs filed suit naming only Defendant TVA on May 6,
2004.  In October 2004, TVA moved for summary judgment claiming
that it was not liable as a matter of law because Minton was
loaned to the Army when the accident occurred.  In November 2004,
this Court granted Plaintiffs' request to stay proceedings until
their administrative claim against the Army was resolved.  The
Army denied their claim and Plaintiffs filed an amended complaint
on February 14, 2005, adding the United States as a Defendant.[1]

Because neither the stay of proceedings nor amendments to
the complaint altered the rationale of Defendant TVA's October
2004 motion for summary judgment, it remained live and Plaintiffs
ultimately opposed it on July 14, 2005, in accordance with the
Court's modified deadline.  See Paper No. 35.  In addition to
opposing Defendant TVA's motion, Plaintiffs alternatively ask the
Court to issue what amounts to a declaratory judgment that the
United States is liable under the theory of respondeat superior
for any of Minton's negligence that contributed to Plaintiff's
injuries.  With discovery yet to begin, the factual record is
sparse.

## II.  LEGAL STANDARD

---

[1] Plaintiffs had filed an amended complaint on December 9,
2004, adding the Army as a Defendant, but later substituted the
United States as the proper party to answer for the alleged torts
of the Army's employee.  See Federal Tort Claims Act (FTCA) 28
U.S.C. §§ 1346(b) & 2671-80 (2004 Supp.).

A moving party is entitled to summary judgment only upon
showing that there exists no genuine issue as to any material
fact, and it is entitled to judgment as a matter of law.  <u>See</u>
Fed. R. Civ. P. 56(c); <u>Blue Ridge Ins. Co. v. Puig</u>, 64 F. Supp. 2d
514 (D. Md. 1999) (citing, <u>inter alia</u>, <u>Celotex Corp. v. Catrett</u>,
477 U.S. 317, 322 (1986)).  The Fourth Circuit states that
"[g]enerally speaking, 'summary judgment [must] be refused where
the nonmoving party has not had the opportunity to discover
information that is essential to his opposition.'"  <u>Harrods Ltd.
v. Sixty Internet Domain Names</u>, 302 F.3d 214, 244 (4th Cir. 2002)
(quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 n.5
(1986)).  "In ruling on a motion for summary judgment, a court
must believe the evidence of the non-movant, and all justifiable
inferences must be drawn in the non-movant's favor."  <u>Estate of
Kimmell v. Seven Up Bottling Co.</u>, 993 F.2d 410, 412 (4th Cir.
1993) (citation omitted).

## III.  DISCUSSION

From the facts in the record it is not yet clear which
combination of Defendants (TVA alone, the United States alone,
both, or neither) is liable for the alleged negligence of Minton.
For this reason, the Court will deny Defendant TVA's motion,
which requires the Court to accept as undisputed fact that Minton
was not under TVA's control at the time of the accident.  The
Court will also deny Plaintiffs' motion, the granting of which
would require the Court to find as a matter of law that Minton

was operating within the scope of his duties to the Army at the time of the accident.

A.  Multiple employer liability and the control tests

As this section will explain, the United States and TVA are each individually amenable to suit for the tortious conduct of their employees, notwithstanding the presumption of sovereign immunity enjoyed by the United States and its instrumentalities.[2] Furthermore, both parties can be properly named as co-defendants because Maryland law permits respondeat superior liability arising out of the single act of one negligent employee to attach to two separate employers.

1.  Potential Government liability under the FTCA

Under the Federal Tort Claims Act (FTCA), the United States waives its sovereign immunity to claims asserting respondeat superior liability for the torts of its employees.  The FTCA expressly confers jurisdiction on this Court for "civil actions on claims against the United States, for money damages [for . . .] personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b).  Under the FTCA,

---

[2]  There is no dispute that TVA is an instrumentality of the United States.  See, e.g., PRI Pipe Supports v. Tennessee Valley Authority, 494 F. Supp. 974, 975 (N.D. Miss. 1980) ("TVA is an agency performing wholly governmental services, and is an instrumentality of the United States.").

"employees of any federal agency, members of the military or naval forces of the United States, . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation" are "[e]mployee[s] of the government." Id. § 2671.

Federal courts consider the United States' control over an alleged tortfeasor's activity to be critical to the determination of his government employee status.  See Means v. United States, 176 F.3d 1376, 1379 (11th Cir. 1999) ("In determining whether an individual is an 'employee of the government' under the FTCA, courts have adopted what is called the 'control test.'") (citing, inter alia, Robb v. United States, 80 F.3d 884, 887-91 (4th Cir. 1996)).  "Under this test, a person is not an 'employee of the government' for FTCA purposes unless the government controls and supervises the day-to-day activities of the individual." Id. (citing Loque v. United States, 412 U.S. 521, 526-32 (1973); United States v. Orleans, 425 U.S. 807, 815 (1976)).

Beyond waiving the United States' immunity to tort claims, one of Congress's concurrent goals in enacting the FTCA was to consolidate claims that would be brought against agencies and instrumentalities of the federal government.  Accordingly, it provides that "[t]he authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this

<u>title</u> in such cases shall be exclusive."  28 U.S.C. § 2679(a) (emphases added).  Therefore, a plaintiff who obtains a remedy from the United States under the FTCA is precluded from proceeding against any federal entity covered by the FTCA or even against the individual tortfeasor.  <u>See</u> <u>id.</u> § 2679(a)-(b).

### 2.  TVA liability and the FTCA

TVA argues incorrectly that Section 2679 makes Plaintiffs' FTCA suit their "exclusive" remedy so that their claim against TVA is necessarily barred.  As explained above, pursuing a claim under the FTCA is only "exclusive" to the extent that it relieves those federal entities covered by the FTCA and the individual tortfeasor from suit.  The FTCA, however, expressly places TVA beyond its scope where it states "[t]he provisions of this chapter and section 1346(b) of this title shall not apply to . . . . . [a]ny claim arising from the activities of the Tennessee Valley Authority."  28 U.S.C. § 2680(l).

While suit against TVA is not precluded by the FTCA, TVA still must waive its sovereign immunity to be amenable to suit. TVA has done so under the Tennessee Valley Authority Act of 1933, which states TVA generally "may sue and be sued in its corporate name." 16 U.S.C. § 831c(b).  Therefore, in light of the fact that the FTCA places suits against the TVA beyond its scope and TVA has independently waived its immunity, pursuing a valid FTCA claim against the United States does not necessarily preclude

naming TVA as a co-defendant[3] where TVA is separately liable for
the tortious conduct of its employee.

Aside from the exclusivity provisions in the FTCA, TVA also
argues that Minton's employment relationship with one employer,
the Army, precludes Plaintiffs' claim against a second employer,
TVA, arising form the same negligent act.  Under controlling
Maryland law,[4] however, a negligent worker can be performing his
duties as the agent of two employers simultaneously, making each
employer potentially liable under respondeat superior.  Keitz v.
Nat'l Paving & Contracting Co., 134 A.2d 296, 301 (Md. 1957)
(citations omitted) ("A person may be the servant of two masters,
not joint employers, at one time as to one act, provided that the
service to one does not involve abandonment of the service to the
other.").  To determine if such a relationship exists, this Court
focuses on the employer's "power to control the servant's
conduct."  Id.[5]

---

[3]  By way of contrasting example, an FTCA claim arising out
of a single incident and naming the United States and the Army as
co-defendants would be barred as to the Army.  See also, e.g., In
re Franklin Savings Corp., 385 F.3d 1279, 1286 (10th Cir. 2004)
(stating that claim against FDIC must be brought against United
States under FTCA because "[FTCA] remedy is 'exclusive' for all
'claims which are cognizable under section 1346(b)'").

[4]  The FTCA directs that tort claims against the United
States be adjudicated "in accordance with the law of the place
where the act or omission occurred."  28 U.S.C. § 1346(b)

[5]  The Keitz court notes that:

     [T]here are at least five criteria that may be
     considered in determining the question whether the
     relationship of master and servant exists. These are:
     (1) the selection and engagement of the servant, (2)
     the payment of wages, (3) the power to discharge, (4)

B.  The undisputed facts

With most of the relevant facts not conclusively
established, summary judgment is not appropriate at this point in
the proceedings.  It has not yet been conclusively established
whether Minton was operating under the control of the Army, TVA,
both, or neither when the accident occurred.  TVA emphatically
asserts, through the sworn affidavit of Ronald Addison,[6] that
Minton was a full-time mail courier for the Army operating under
the Army's control at the time of the accident.  While discovery
might ultimately reveal this to be the case, TVA's insistence
does not make it so.  TVA plainly admits that Minton was a TVA
employee and was driving a TVA vehicle when the accident
occurred.  Furthermore, there is no evidence in the record that
conclusively shows what Minton was doing in the parking lot that
day or who was directing or controlling his actions.

While the Addison declaration and documents are certainly
probative of the substantial likelihood that Minton was under the

the power to control the servant's conduct, (5) and
whether the work is a part of the regular business of
the employer. Standing alone, none of these indicia,
excepting (4), seem controlling in the determination as
to whether such relationship exists.

Id.

[6] Addison identifies himself as a TVA employee on long-term
loan to the Army.  He asserts that during the relevant time
period, he was the supervisor of TVA employees on loan to the
Army at Aberdeen Proving Ground.  He also attaches Minton's 1999
job description and two Memoranda of Understanding, under which
TVA provided its employees to the Army.  The April 2002 accident
does not fall within the express time periods of either
contract's terms.

8

control of the Army in April 2002, in the face of the United States' unwillingness to certify[7] or stipulate that Minton was performing within the scope of his Army duties at the time of the accident, the Court cannot consider the Army's control and TVA's concurrent absence of control to be undisputed facts.

**IV.  CONCLUSION**

For these reasons, Defendant TVA's motion for summary judgment will be denied and Plaintiffs' motion for summary judgment will be denied.  A separate order consistent with the reasoning of this Memorandum will follow.

_____/s/_____
William M. Nickerson
Senior United States District Judge

Dated: September 2, 2005

---

[7]  See, e.g., 28 U.S.C. § 2679 (addressing certification by Attorney General that allegedly tortious employee conduct was within scope of government duty).